## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **KENNETH WILLIAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:04-cv-0507-MJR** |
| | ) | |
| **JOANNE B. BARNHART,** | ) | |
| **COMMISSIONER** | ) | |
| **OF SOCIAL SECURITY,** | ) | |
| | ) | |
| **Defendant.** | | |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

This matter is before the Court pursuant to **Local Rule 9.1** regarding the disposition of Social Security cases in this District.  Plaintiff Kenneth Williams brought this action pursuant to **Section 205(g)** of the Social Security Act, as amended **42 U.S.C. 405(g)**, to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits (DIB) under Titles II and XVI of the Social Security Act.  For the reasons set forth below, the final decision of the Commissioner of Social Security denying benefits is **REVERSED**, and the matter is **REMANDED** to the agency for further review consistent with this Court's Order.

## BACKGROUND

### I. Administrative Proceedings

Plaintiff filed an application for disability insurance benefits ("DIB") on March 2, 2001 [1] (Tr. 305-07).  His claim was denied by the agency initially and upon reconsideration  (Tr.

_____

[1] Plaintiff filed a previous application for disability benefits on February 8, 1999 which was denied.  (Tr. 102-04).  The Agency's denial of the February 1999 application is not before this Court for

282-83, 289-93).   On October 21, 2003, a hearing was held before the ALJ and Plaintiff appeared

with counsel and testified (Tr. 544-81).   On January 16, 2004, the ALJ denied Plaintiff's application

for DIB (Tr. 257-65).   The ALJ found that Plaintiff could still perform a limited range of sedentary

work despite his impairment (Tr. 257-65).   On May 19, 2004, the Appeals Council denied Plaintiff's

request for review, thus making the ALJ's decision the final decision of the Commissioner (Tr. 249-

51).   On July 19, 2004, pursuant to **42 U.S.C. § 405(g)** and  **42 U.S.C.  §1383(c)(3)**,  the Plaintiff

commenced a civil action for judicial review of the ALJ's decision.

## II.  Statement of Facts

At the time of the of hearing, Plaintiff was 55 years of age (Tr. 264).   He has a high

school education and a B.A. in English (Tr. 264).  Plaintiff has past work experience which includes

employment as a construction worker and a public aide counselor (Tr. 264).   The ALJ evaluated

Plaintiff's application through step 5 of the sequential analysis and concluded that Plaintiff had

arthritis, depression and a personality disorder that were severe but did not meet or equal the criteria

of any of the impairments listed in the Social Security regulations (Tr. 264).   The ALJ also

determined that even though Plaintiff's exertional limitations did not allow him to perform the full

range of sedentary work, he retained the ability to perform to perform a significant number of

sedentary jobs in the national economy even though his occupational base was eroded because he

could only perform low stress tasks with no public contact (Tr. 264).   The ALJ concluded that he

was not disabled because he could perform work as a stock and inventory clerk, billing clerk, and

proofreader (Tr. 264).

---

review.

## A.  Medical Evidence[2]

On April 14, 1999, William D. Stephens, Ph.D. opined that Plaintiff was oriented as to place, person, month and year but did not know the exact date of the month.  His immediate recall was mildly impaired and that he did not relate well socially (Tr. 189-90).

On April 26, 2000, Ashraf N. Ahmed, M.D. diagnosed Plaintiff with a Global Assessment of Functioning[3] (GAF) of 50.  Dr. Ahmed offered Plaintiff antidepressants but he refused them (Tr. 227, 390).

On August 9, 2000, VA staff psychiatrist Lisa S. McCutchen ("McCutchen") diagnosed Plaintiff with a GAF of 45/55.  The Plaintiff reported that he had not taken Zoloft[4] due to his inability to buy the medicine but he reported he would resume taking the medication for his depression (Tr. 233-35).

On September 11, 2000, Naresh K. Agarwal, M.D. diagnosed Plaintiff at a GAF of 45/55.  Dr. Agarwal indicated that Plaintiff had been taking Zoloft for depression and that he was adding

---

[2] Plaintiff's arguments to this Court regard the ALJ's findings as to his mental impairment. Therefore, the Court will limit its discussion of the medical evidence to that issue.

[3] **Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, text revised (DSM-IV-IV-TR)  p. 32-33** states "Axis V is for reporting the clinicians's judgment of the individual's overall level of functioning. ... The reporting of overall functioning on Axis V can be done using the Global Assessment of Functioning (GAF) Scale.  The GAF Scale may be particularly useful in tracking the clinical progress of individuals in global terms, using a single measure.  The GAF Scale is to be rated with respect only to psychological, social and occupational functioning. ... It should be noted that in situations where the individual's symptom severity and level of functioning are discordant, the final GAF rating always reflects the worse of the two."

DSM-IV-TR labels a GAF score between 40 and 50 denotes "serious impairment in social, occupational, ... functioning.  No friends and unable to keep a job." *Id.* **at 34.**  The DSM-IV-TR labels the GAF range of 50-60 as "moderate symptoms in social or occupational. . . functioning. Few friends, conflicts with peers and co-workers. ***Id.***

[4]The record is unclear as to when Plaintiff started taking Zoloft, an anti-depressant.

3

small doses of Welbutrin (Tr. 230, 421)

On December 21, 2000, M.L. Bloos ("Bloss"), VA staff psychologist, reported that Plaintiff stated that his medicine seems to be helping with his mood.  Bloos opined that it was uncertain if Plaintiff would benefit from therapy.  Plaintiff's GAF on that date was 55/55 (Tr. 416).

On January 7, 2001, Bloos diagnosed Plaintiff's GAF at 55/55 (Tr. 514).

On January 9, 2001, McCutchen diagnosed Plaintiff with a GAF of 55/55.  Plaintiff was taking Sertraline and Bupropion for mood and depressive symptoms at that time.  Plaintiff indicated that he was more even tempered and taking things in stride better than he had in the past (Tr. 415).

On February 7, 2001, Bloos opined that Plaintiff had a GAF of 55/55 (Tr. 412).  She stated Plaintiff's GAF was 55/55 on March 2, 2001 (Tr. 411).   On March 8, 2001, she opined that Plaintiff's degree of stress over the past few months and on the date of this examination could cause an impairment in Plaintiff's ability to concentrate, decision-making, and attentional difficulties. Bloos also opined that Plaintiff would have more difficulty functioning in a job situation when under stress, however, he could tolerate low levels of stress without interference in his cognitive abilities (Tr. 248, 408).

On April 30, 2001, Donald E. Henson, Ph.D. opined that Plaintiff had limitations on his ability to perform detailed activities of some complexity but could perform simple routine activities which have few social demands (Tr. 373).

On May 11, 2001, Bloos diagnosed Plaintiff at a GAF of 55 and on June 25, 2001, opined that Plaintiff's GAF was at 55/55 (Tr. 400).

On July 7, 2001 Bloos  diagnosed Plaintiff's GAF at 55/55 (Tr. 527), and on July 24,

2001, diagnosed his GAF at 55/55 (Tr. 527).

On August 1, 2001, Harry J. Deppe, Ph.D., who Plaintiff saw for a consultive psychological examination, observed Plaintiff's hygiene to be poor and his clothes noticeably disheveled.  Deppe opined that Plaintiff's judgment and insight were poor.  Deppe also opined Plaintiff's ability to relate to others, which included co-workers and supervisors, was impaired; his ability to understand and follow simple instructions was mildly impaired; his ability to maintain attention required to perform simple repetitive tasks was mildly impaired; and his ability to withstand the stress and pressures associated with day to day work activity was mildly impaired. Deppe further opined that Plaintiff's GAF was 60 (Tr. 429-32).

On October 31, 2001 Bloos opined Plaintiff's GAF to be 60/60 (Tr. 519).

On December 4, 2001, McCutchen indicated Plaintiff was taking his medicine. McCutchen diagnosed a GAF of 60/60 (Tr. 517).

On February 8, 2002, Bloos opined that Plaintiff's GAF was 50/55 (Tr. 509-510).

On May 6, 2002, McCutchen indicated that Plaintiff was taking his "psych" medicine as prescribed.  His GAF was 50/55 (Tr. 489-90).

On May 13, 2002, Bloos, diagnosed Plaintiff's GAF at 50/55 (Tr. 488).

On August 7, 2002, McCutchen diagnosed his GAF at 55/60 (Tr. 475).

On September 19, 2002, Behavioral Medicine Nurse Theresa N. Atwood ("Atwood"), R.N. diagnosed Plaintiff with a GAF of 50/55 (Tr. 468).  At that time Plaintiff's current medication included Bupropion and Sertraline.

On February 11, 2003, Atwood opined that his GAF at 50/55 (Tr. 449-50).

On May 15, 2003, McCutchen indicated that Plaintiff was taking his medication as

prescribed: Bupropion, Wellbutrin, and Sertraline.  McCutchen diagnosed Plaintiff at a GAF of 55/55 (Tr. 433).

### B.  Vocational Expert Evidence and Hearing Testimony

Dr. Thomas Upton was called to testify in the capacity of vocational expert (VE) at the  October 21, 2003 hearing before the ALJ (Tr. 571-80).  The ALJ inquired of Dr. Upton whether there were other kinds of jobs at the sedentary or light, semiskilled or skilled level that could be performed by a man of Plaintiff's age with Plaintiff's background that would be less stressful for the Plaintiff (Tr. 573).  Dr. Upton opined that there were jobs that could potentially be transferrable that had less personal involvement: sedentary semiskilled stock and inventory clerk, which would use Plaintiff's prior specialized ability to independently input detailed computer information, sedentary semiskilled billing clerk, and sedentary semiskilled proofreader which would put to use Plaintiff's English background (Tr. 573).  Dr. Upton testified that the proofreader would be the most stressful due to deadlines associated with that type of work (Tr. 573-74).  The ALJ then inquired of Dr. Upton whether there were unskilled but less stressful light work with a stand/sit option (Tr. 574).  Dr. Upton found jobs existed in this area also (Tr. 574).   Those jobs were: light unskilled assembly work, light unskilled hand packaging and sedentary unskilled production inspector (Tr. 575).

The ALJ inquired of the semiskilled sedentary jobs, how much direct contact with the public occurs (Tr. 575).  Dr. Upton responded that there would mostly be contact with office personnel and that he understood from the Plaintiff's testimony that he only had difficulty with contact with co-workers, not the public (Tr. 575).   Next, the ALJ questioned Dr. Upton about how much contact with co-workers the Plaintiff would have in the semiskilled sedentary jobs (Tr. 575).  Dr. Upton opined that there would be some, but not a lot, except for the proofreading job which

would have more contact with co-workers (Tr. 575).  The ALJ then inquired about the amount of public contact Plaintiff would have with the light unskilled jobs (Tr. 575).  Dr. Upton indicated that the Plaintiff would not have contact with the public in those jobs. (Tr. 575).  The ALJ then asked Dr. Upton how much co-worker interaction would occur in the light unskilled jobs (Tr. 575).  Dr. Upton indicated that there would be quite a bit of interaction with co-workers in the assembly jobs and not as much co-worker contact in the hand packaging and production inspection jobs, with the exception of supervisors (Tr. 575-76).

The inquiry then turned to arguments or confrontations with co-workers (Tr. 576). Dr. Upton opined that if Plaintiff had more than two disagreements with co-workers, or if it became a trend as in weekly or daily occurrences, it would not be tolerated.  Insubordination would not be tolerated either  (Tr. 578).  Absenteeism on a regular basis would also be considered unacceptable (Tr. 576).

The ALJ then informed Dr. Upton that Plaintiff had been given a GAF between 50 and 60 and wanted to know from a vocational standpoint what Upton's cut-off would be  (Tr. 577). Dr. Upton indicated that a person with a GAF of 55 or 60 would have poor quality work due to their inability to follow directions, interact with co-workers, and supervisors.  He further opined that over the long haul a person with a GAF of 55 or 60 would not remained employed.  He considered the long haul to be over a month (Tr. 577).  Dr. Upton indicted that Plaintiff could get a job but probably would not be able to keep it (Tr. 577-78).  The ALJ asked Dr. Upton, based upon his expertise, what GAF would signify that a person could get a job and keep it (Tr. 578). He opined that a person who had a GAF of 70 or above and had some assistance or accommodation in the work force would be able to obtain a job and keep it (Tr.578).  Dr. Upton went on to testify that a GAF of 50 or below

was clearly unacceptable (Tr. 578). He opined that a GAF of 60 did not preclude employment but the prognosis for long term successful employment was not good (Tr. 578).

Upon questioning by Plaintiff's attorney, Dr. Upton indicated that a GAF between 50 and 60 was a grey area because someone in that category was probably not going to be very successful (Tr. 579). Plaintiff's counsel then inquired about the ability of a person to perform a sedentary semiskilled job if the person could not concentrate enough to stay on task or had moderate difficulties with concentration (Tr. 579-80). Dr. Upton opined that if an individual had some sort of difficulty in their attention and concentration, employment at any skill level would be impossible to sustain (Tr. 580).

### DISCUSSION

### I. The ALJ's Decision

The ALJ concluded "[a]fter carefully considering all the evidence" that Plaintiff was unable to return to his past relevant work, but was able to make an adjustment to work which exists in significant numbers in the national economy. This conclusion was based on findings regarding his age, education, work experience, and residual functioning capacity (Tr. 258). Therefore, she concluded that Plaintiff was not disabled within the meaning of the Social Security Act and its regulations and thus not eligible to receive DIB based on his March 2, 2001 application (Tr. 258).

The ALJ's evaluation of the evidence referenced the following psychological evaluations and GAF scores: January 9, 2001(GAF 55); August 1, 2001 (GAF 60); December 24, 2001(GAF 60); February 11, 2003 (GAF 50/55) and May 15, 2003 (GAF 55). The ALJ's decision does not address the testimony of the VE, Dr. Upton (Tr. 257-65).

### II. Legal Standard

8

To receive DIB, a claimant must be "disabled."  A disabled person is one whose physical or mental impairments result from anatomical, physiological, or psychological abnormalities which can be demonstrated by medically acceptable clinical and laboratory diagnostic techniques and which prevent the person from performing previous work and any other kind of substantial gainful work which exists in the national economy.  **42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A), 1382c(a)(3)(B), and 1382c(a)(3)(D).**

The Social Security regulations provide for a five-step sequential inquiry that must be followed in determining whether a claimant is disabled.  **20 C.F.R. § 416.920.**  The Commissioner must determine in sequence: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets or equals one listed by the Commissioner, (4) whether the claimant can perform his or her past work, and (5) whether the claimant is capable of performing any work in the national economy.  ***Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).**  If the claimant does not have a listed impairment but cannot perform his or her past work, the burden shifts to the Commissioner at Step 5 to show that the claimant can perform some other job.  ***Id.***[5]

Under the Social Security Act, a court must sustain the Commissioner's findings if they are supported by substantial evidence.  **42 U.S.C. § 405(g).**  Substantial evidence is "more than a mere scintilla" of proof.  The standard is satisfied by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." ***Richardson v. Perales*,  402 U.S. 389, 401 (1971); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999)**.  In addition, the ALJ must build a bridge of logic connecting the evidence to the conclusions that support the decision.  ***Groves v.***

_____

[5] It is undisputed that the issues on appeal revolve solely around Step 5.

*Apfel*, **148 F.3d 809, 811 (7th Cir. 1998).** Because the Commissioner is responsible for weighing the evidence, resolving conflicts in the evidence, and making independent findings of fact, this Court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Id.* However, the Court does not defer to conclusions of law, and if the Commissioner makes an error of law or serious mistakes, reversal is required unless the Court is satisfied that no reasonable trier of fact could have come to a different conclusion. *Sarchet v. Chater*, **78 F.3d 305, 309 (7th Cir. 1996).**

**III.  Issues on Appeal**

**A. Treating Physician's Assessment of Plaintiff's GAF**

Plaintiff argues that first, that the ALJ did not give controlling weight to the Plaintiff's treating physician's assessment of the claimants GAF.  Plaintiff argues that the following findings by the ALJ are inconsistent with the medical evidence in the record [6]:

> The claimant suffers from depression and a personality disorder.
> He suffers from a sleep disturbance, psychomotor agitation,
> decreased energy and feelings of guilt and worthlessness.  He also
> shows pathologically inappropriate suspiciousness or hostility. ...
> The evidence supports a finding that the claimant has mild limitations
> in his activities of daily living. . . . The evidence supports a finding
> that the claimant has moderate limitations in his activities of daily
> living. ... The evidence in totality leads to a finding that the claimant
> has mild limitations in concentration, persistence, or pace.

(Tr. 261).

Even though the ALJ is not required to give controlling weight to GAF scores, she did question the VE regarding those scores and Plaintiff's ability to obtain and maintain employment

---

[6] It should be noted the Plaintiff fails to include in his brief all the diagnoses of his GAF.  He only refers to the diagnoses of 50 and omits the diagnoses that are higher.

(Tr. 577-78).   She refers to five GAF scores in her evaluation of the evidence (January 9, 2001, August 1, 2001, December 24, 2001, February 11, 2003 and May 15, 2003), but fails to address if she considered the other eleven GAF scores.   She does not indicate why she chose the five scores she did or why she gave more weight to those five scores than the others.   She does not indicate why she gave more credence to Dr. Deppe's one time consultive evaluation versus the regular treatment by the psychologist and psychiatrist at the VA hospital.   She fails to address why she gave so much weight to Dr. Deppe's GAF of 60 when Dr. Deppe also observed Plaintiff's hygiene to be poor, his clothes noticeably disheveled, and found Plaintiff's judgment and insight to be poor.   The ALJ did not indicate her reasons as to why the other scores were not included or not reliable.   The ALJ also failed to indicate how she came to the conclusion that even with his limitations, the Plaintiff would be able to work when Plaintiff had been receiving treatment and taking medications, which seemed to be helping Plaintiff, yet his GAF remained in the 50 - 55 range (Tr. 400, 415, 416, 433, 449-50, 468, 489-90)

Additionally, the ALJ failed to consider whether Plaintiff met the criteria of **20 C.F.R. Pt. 404, Subpt. P., App. 1, § Listing 12.08** (Personality Disorders).   The ALJ found that Plaintiff had a personality disorder and that he showed pathologically inappropriate suspicions or hostility (Tr. 261).   Yet, she failed to address the evidence in the record that Plaintiff had marked restriction in his activities. (his only activities were mowing the lawn and laying down to watch T.V.) (Tr. 258).   He did no shopping or household chores (Tr. 258).   He had difficulty maintaining social function (no friends) and that he had difficulty with concentration.

ALJs must consider all relevant evidence.  ***Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).**   They may not select and discuss only the evidence that favors the ultimate conclusion.

11

*Orlando v. Heckler*, **776 F.2d 209, 213 (7th Cir. 1985).** The ALJ's opinion lacks evidentiary support and an adequate discussion of the issues. The ALJ failed to evaluate medical opinion evidence in accordance with the applicable legal standards. Because this error detracts from the reliability of the ALJ's assessment of the Step 5 decision, this action must be remanded for further findings.

### B. Testimony of Vocational Expert

Plaintiff's second argument is that the ALJ did not give proper consideration to the VE's testimony. Plaintiff further argues that the ALJ did not just discredit the testimony of the VE, she never mentioned it. The ALJ called the VE as an expert, but never referred to the VE's testimony in her decision (Tr. 257-65). After the VE concluded that there were jobs in the national economy that Plaintiff could perform, the VE was then asked about an individual with a GAF of 50 - 60 and about a person with limited attention and concentration. The VE testified that Plaintiff's success in obtaining and maintaining employment was not good with a GAF under 70 (Tr. 580). The VE further testified that if the Plaintiff had difficulty in his attention and concentration, employment at any level would be impossible to sustain (Tr. 580). While it appears that the ALJ must have relied on the VE's testimony to conclude that Plaintiff could perform a significant number of jobs in the national economy, she failed to state how she reached that conclusion. The ALJ failed to address the VE's specific findings that an individual with a GAF of 50-60 might be able to obtain employment but would be unable to maintain employment for more than one month. Furthermore, the VE testified that if Plaintiff had trouble with attention and concentration[7], employment would

---

[7] The ALJ stated in her findings that she did not find the Plaintiff to be credible, but did not state what her basis for this finding was. On remand, the ALJ should indicate why she found the Plaintiff's testimony not be credible. "It is not sufficient for the adjudicator to make a single, conclusory statement

be impossible to sustain.  The ALJ does not address this part of the VE's testimony either.

In that the ALJ failed to discuss the VE's testimony, her decision cannot stand.  The Court cannot determine, from the record, whether the ALJ adequately considered  the issues raised by the VE  because she failed to discuss them.  The Court is unable to find a bridge of logic connecting the  evidence to the conclusions that supports the ALJ's decision.  On remand, the ALJ must resolve this inconsistency and articulate a basis for her conclusion that there are a significant number of jobs in the national economy that Plaintiff could perform.

## CONCLUSION

For the reasons stated above, the Commissioner's final decision denying Plaintiff Kenneth Williams application for Disability Benefits is **REVERSED and REMANDED** for further review or proceedings and a new decision pursuant to sentence four of **42 U.S.C. § 405(g)**.   On remand the ALJ should consider the testimony of the VE; reevaluate the medical evidence and vocational evidence regarding Plaintiff's GAF scores and ability to concentrate, consider whether Plaintiff meets  **Listing 12.08** and discuss specifically why the Plaintiff's testimony was not found to be credible and reevaluate whether the Commissioner has met her burden at Step 5.

**IT IS SO ORDERED.**
**DATED this 30th day of September, 2005.**


**s/Michael J.  Reagan**
**MICHAEL J. REAGAN**
**United States District Judge**

_____

that the individual's . . . allegations are not credible."  **SSR 96-7P (1996)**.

14